First off, I want to welcome Judge Keenan from the Southern District of New York, and we thank him for helping us out this morning. I understand counsel in the first case is running behind, so we will bump that case to the end of the calendar. We will take United States v. Canfield. Good morning, Your Honors. Susan Wolfe for Ryan Canfield. The first issue I would like to address is the District Court's refusal to give a venue instruction. It was requested, and it was explicitly denied, and the exception was noted, and there was more than . . . Was it actually requested? I mean, there apparently is an off-the-record charging conference, so we don't know what was said then, and then . . . I'm not sure that he asked for an instruction. He asked for a mention of venue. Well, there was a pre-trial motion on venue. There were Rule 29 arguments about venue. The implication, as I read it, was that the Court denied a request for an instruction and instead said, that will be covered in the jury verdict. And that means what was subsequently done, which is to mention . . . Implicitly. At a minimum, implicitly requested and denied. Yes, Your Honor. And I don't . . . I know it's . . . Was the jury asked to decide venue? You mean, was that argued by defense counsel to the jury? Was the jury . . . Typically, in the Southern District of New York, I mean, well, most of the time it wasn't an issue at all, and counsel would waive it, but usually there would be an instruction that the jury would have to find venue by a preponderance of the evidence. There was nothing like that here, I gather? No. There was no instruction, and as I said, the judge said, denied. And then, having said, it'll be covered in the jury verdict form, the Northern District of New York was mentioned in connection with Count 1, and then there was no reference to the Northern District in New York on the form in connection with Counts 2 through 9. Those were the phone counts? Yes. And I want to address the government's claim that it was waived, and it was not. It was argued in the Rule 29 motion at the end of the government's case by defense counsel, and that he specifically said, conspiracy with respect to Count 1. That conspiracy is the same conspiracy charged in Counts 2 through 9. So, if venue had been insufficient for Count 1, it would also be insufficient for Counts 2 through 9. So, it was not a material difference that he asked only in making a Rule 29 motion for dismissal on the conspiracy count. Let's say that we agree with you about forfeiture, waiver, however you want to describe it. Where's the prejudice? The prejudice is that there was, in fact, insufficient evidence of venue on, and I'll start with Counts 2 through 9. They were based on texts that solely had to do with where and when, the corner of this, at what time. Nothing about what would be discussed when she got there. And I'm talking about Dominello, who was the government's agent. There was also an undercover agent who accompanied her. She had text Canfield a number of times a while earlier. There were two occasions when they planned to meet. She had text him before the first several times. He ignored it. They planned to meet. In those conversations, there were more than just where and when. I think there was a mention of money that she owed him and wanted to give him. That was called off, fell through. She called it off. Two months go by. He also ignores texts from her, and I think also phone calls, and finally responds. And that's when these texts about meeting occur. And there was a conversation. At least one participant in those texts, either a sender or a recipient, was in the northern district of New York? Yes, it was a government agent who was in the northern district of New York. And so the- The government argues that we've never held that the issue of venue, well, not since 1994, I guess, that the issue of venue has to be put to the jury. What's your response to that? My response is that over and over again, this court has considered sufficiency of venue as it was presented to the jury. It's never held in the context of any of those cases that it didn't need to go to the jury. So it would be new law if this circuit were to hold, well, it didn't need to be found by the jury. The fact that the government agent, the co-operative, right, was in the northern district of New York, was that disputed when she engaged in these texts? Well, it was disputed in the sense that there was no evidence from the texts themselves that she was in the northern district of New York. Well, there was testimony from her that she was in the northern district of New York. There was testimony. I believe there- And was that refuted or disputed? It was, it was disputed. There was- Could you show me where that was disputed? Your Honor, if I have a chance, when I sit down before reply, I will try to locate that for you. Because you would agree with me if there was no dispute about her whereabouts as she was texting, that would be at least evidence of a venue for the phone counts. And certainly for the conspiracy count. Would you agree with that? Well, no, because there was no evidence that these texts were a use of a communications facility in furtherance of a conspiracy or a distribution. There certainly was no venue for a distribution in the northern district of New York, which occurred subsequently without any planning or conversations planning it during the text. And a distribution is a single act offense that occurred solely in Connecticut. And your honors, I see that my time is up and if there's any other questions, I'd be happy to answer. Thank you, you have some time for rebuttal. Thank you. We'll hear from the government. May it please the court, Rajeev Dosanjh for the United States. Mr. Canfield has raised numerous claims on appeal. At the outset, it bears emphasis that many of those claims were never raised below and either should be found to have been waived or at the very least must be reviewed for plain error. Rather than spending my time repeating those waiver arguments for each claim, I intend, with the court's indulgence, to focus on the merits of those claims. And I'd like to start, if I may, not with the issue raised previously, but with the question of the mens rea requirement under 841. I just wanted to emphasize that the court doesn't have to enter into the legal ticket that concerns the mens rea requirement under 841. Because in this case, and I perhaps should have pointed this out more clearly in our brief, the jury was instructed under the standard that I think Justice Roberts would have approved of. The jury was told that you cannot convict unless Mr. Canfield, didn't know that what he possessed was in fact a controlled substance. And that he knew that methylone was a controlled substance at the time, and that's at transcript 622. The evidence permitted a reasonable juror to conclude that MD, Mr. Conti, and the co-conspirator, Mr. Chin, all knew that methylone was a controlled substance. Turning also then to the question of jumping ahead to venue. Your honors, I do not think it was disputed. There is testimony at trial that- I gather you agree the jury was not asked to decide whether there was venue? There is no instruction to that. Was there a request by the government, because in the Southern District, the government gives you requests for charge, and it's standard that there's a request that there be a charge made that venue is by a fair preponderance of the evidence and the burdens on the government.  There is not, your honor, here. The conspiracy counts as defense counsel pointed out, noted that the conspiracy was located in the Northern District of New York, or that it touched the Northern District of New York. The phone counts. Did the court ever make a finding that there is venue? Your honor, I do not believe so. There's no finding that there was venue. No, but your honor, the evidence is quite clear that there was venue here, so when- That's why I mean, this is why I'm focused on prejudice. Right. Because my understanding is that there might have been either an objection or a request, but there was no, the jury was never asked to find venue. There's no finding on venue, it's just Chin mentioned. So we're now focused, in my view, on whether the evidence of venue was fairly overwhelming or unrefuted. And your honor, I believe it was. And can you address then Ms. Wolfe's contention that none of the phone counts, that's what I'm very focused on, involved using the text in furtherance of a drug conspiracy? Well, your honor, I think the plan to meet in New Haven, that was the particular focus of the phone counts. That was quite clearly a plan to both deliver drug proceeds to Mr. Canfield that MD owed him, and to arrange for her and her friend to get more methylone from him. And there is testimony at trial that MD was in the DEA office near Albany when she sent those texts. And also, it's not clear whether you have- Is that from the text or is that from her testimony about her texts or a combination? It's, my notes indicate, your honor, that this is actually testimony from MD and from DEA agents confirming the fact that she was there. Now, if foreseeability is a question as well, I think there's ample evidence also that Mr. Canfield would have known with a high likelihood that MD was in Albany at the time. She and him had a longstanding relationship. He had projected the conspiracy into the Northern District of New York by asking her to pick up packages in Altamont, just outside of Albany. He knew for a fact that she lived there, and he asked her to actually distribute methylone for him there. And she also, and a couple points, and the references are Supplemental Appendix 396 and 398. Let him know that she was texting from home. And for those reasons, I think that it was quite foreseeable to Mr. Canfield that Venue was in the Northern District. If I may, your honors, I'm jumping around a bit. But if I'm turning just to the actual text messages themselves. There's a claim here that it was multiplicitous in the indictment to charge more than just a whole conversation. And I think for the reasons we explained, that cannot be the unit of prosecution. And it's not unreasonable to think that when you're using a text device, it's very much like a telegraph, which is included in the statute. If people are having a conversation through a telegraph machine, I think there's no doubt that each use of the telegraph, each use of the transmission facility- The time you hit send, in other words. Right, is a use. And that was the theory the government went with, and I think it's a reasonable one. If it's all back and forths in the course of one conversation, if it were a telephone call, you would call it one transmission. Right. Why is this different? I mean, if it's a series of texts back and forth, what's the rationale for treating each time you hit the send button as a separate transmission? I think because it's an intentional use of the facility each time. When you are, the statute itself says that each separate use of the facility is a separate crime. It makes that clear. Now, the question is, what is a separate use? With a phone call, the line of communication is clearly open. It's continuous. Neither party has to do anything to keep it open. With a text message, each time you compose a text, you have to hit send. That is another use of the, another initiation of the transmission. Excuse me now. As I look at your charts on page 24 and 25 of your brief, count seven, well, count six was 9.50 a.m. Count seven was 9.51 a.m. I mean, why isn't that what Judge Chin just said? Why isn't it all one? How can you have different counts? I think, your honor, what counts as a use? I think the statute would contemplate that it would change depending on the type of technology involved. I don't think that renders the- What about counts two and three? Three is simply okay. Right. By itself, who knows what it means? So you have to look at it in context with the text that's in count two. It would seem to me would make sense for that to be one, one. I think it could be. It could be charged as one conversation. You did that with some of the others. Right. But, your honor, I think it's not an unreasonable interpretation to say that when you receive a text or you send a text every time, even if it's one word, even if it's just a picture, that is a use of a communications facility. And I think it gives fair notice to the defendant that every time he or she's using a device like this, pressing send, we're- Sentences were all concurrent in- Right, right, your honor. So as far as the multiplicity is concerned with avoiding double punishments, here, Mr. Canfield's sentence was 144 months total. And for each of the phone counts, he got 48 months, and all the counts ran concurrently. So there was no extra punishment for each additional phone count. I see my time is about to expire. If there's any other questions, I'd be happy to answer those. Thank you. We'll hear the rebuttal. Thank you, your honors. The government on the counts two through nine, on counts two through nine, Tells the court that these phone calls, these texts were part of a plan to deliver proceeds and purchase drugs. I submit there's nothing in the history of the texts themselves or in the text that shows that. He ignores texts for a period of time during some conversation that they have. I don't recall if it's a text or a Facebook conversation. He says, I think you're up to no good. It is what he's doing when he agrees to meet with her. He wants to eyeball her. He wants to find out what she's up to. And it turns- Outside whether indeed these texts were in furtherance? Well, it was, your honor. And our argument is that the evidence was insufficient for a jury to find beyond a reasonable doubt. You're making a sufficiency argument, yeah. Yes. And with respect to the, going back to the knowledge, sufficiency of knowledge on the conspiracy, there was affirmative evidence that when I lumped Dominello and Conte together because they acted together, did not know that the substance was an illegal drug. Dominello had been arrested with her boyfriend with the drug. She wasn't charged with it. Canfield told her at one point that it's not illegal. If you think that it's not illegal, why do you engage in all, I say you, why do they engage in all sorts of evasive conduct, efforts to conceal, putting the methalone in a beer, in a hidden compartment? Why do that? And wasn't, second question, the jury entitled to view those efforts to conceal as evidence in support of their mens rea, their knowledge? There were certainly evidence that Mr. Canfield knew. Can't be. There was certainly evidence that Mr. Canfield, I guess it is me. Should I turn it off? Yes, go ahead. I sincerely apologize. That hasn't happened before. There was, all of your honor, the evidence you're mentioning is evidence that he knew. But there was affirmative evidence that they did not know, Dominello and Conte. And finally, there was, the government argued a certain conversation between Mr. Chin in China, and I believe he was in China, and Mr. Canfield. We argued in the brief that various conversations were buyer-seller conversations, not conspiracy conversations. I did not address in the brief this particular conversation. There were many conversations I didn't address. But when the government raised this particular conversation, I addressed it in reply. It wasn't, I submit, waived on appeal, and it was simply a buyer-seller conversation. It does not show a conspiracy between them. Thank you. I do want to go back to venue just for a moment. Sure. If we agree with the government, disagree with you on the significance of the texts and conclude that indeed the evidence was that she was in the northern district, what happens in terms of your venue argument? I mean, is indeed, do you have to show prejudice from the failure to put the issue to the jury, or what are your thoughts on that? Well, prejudice is that the jury could reasonably have concluded that there was no venue. She was a government agent. And if we disagree with that, and a reasonable jury could only find that she was indeed in Albany and the texts were in furtherance, do you lose that point, or what? To the extent that venue, courts and the Supreme Court has said it is an element and an issue of constitutional dimension, then it's an error for the court not to charge. You're saying that this is a structural error? No. That's what that answer suggests. So if it's not a structural error. No, it's not a structural error. What is it? Can I just ask you a question, ma'am? I'm sorry, you finish, and then I- No, no, no, I think I've got my answer. Are you suggesting that venue is an element of the crime? Yes. It's an element of the crime to the extent that it has to be put before the jury and decided by the jury. And we've never held that, but you're asking us to hold that now, I gather. Well, your honors have looked at cases where- I take it back. We have old cases that really were, 1994, I can't remember the case, that said if it's squarely raised, it should be put to the jury. That's before the case is saying it's not an element. And so- And it doesn't have to certainly be proven beyond a reasonable doubt. No, it doesn't have to be proven beyond a reasonable doubt. And when I say element, I suppose it's more properly termed jurisdictional. And if there was no jurisdiction in the Northern District of New York, then the conviction on it should be vacated. It's not jurisdictional, but it's- In the usual sense. In the usual sense. But, okay, I think- All right, thank you. Thank you. We will reserve decision.